UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10349-CR-DPW |
| DIONISION TAJEDA-ORTIZ<br>**True Name:  Pablo Tajeda-Ortiz** | ) ) ) ) | |

**DEFENDANT PABLO TAJEDA-ORTIZ'
SENTENCING MEMORANDUM**

**I.    Introduction.**

In this Sentencing Memorandum, defendant Pablo Tajeda-Ortiz asks the Court, first, to find that the maximum sentence he faces is two years, not twenty years, and to sentence him accordingly.  If the Court rejects the Defendant's argument about the statutory maximum (which challenges the continuing vitality of *Almandarez Torres v. United States,* 523 U.S. 224 (1998)), defendant requests, as an alternative, that the Court impose a sentence of no more than 45 months.

**II.   The Statutory Maximum is Two Years, Not Twenty Years.**

The Indictment in this case charges, simply, that defendant, "having been excluded, deported, and removed from the United States, was found in the United States without having received the express consent of [the appropriate official] to reapply for admission to the United States."  That language tracks the language of 8 U.S.C. §1326(a), which carries a two-year maximum sentence.  The Indictment does not charge that the defendant was removed "subsequent to a conviction for commission of an aggravated felony"--the trigger that creates a

B3105811.1

twenty-year statutory maximum, see 8 U.S.C. §1326(b)(2), and defendant did not plead guilty to having been excluded "subsequent to a conviction for commission of an aggravated felony."

In *Almendarez-Torres*, 524 U.S. at 527, the Supreme Court held that proof a prior conviction under 8 U.S.C. §1326(b)(2) was not an element of the offense, but rather a sentencing enhancement. As a consequence, the Court held, the government need not allege the fact of a prior aggravated felony conviction, nor prove it at trial. *Id.* Eight years later, however, following the Supreme Court's decision in *United States v. Booker*, ___ U.S. ___, 125 S.Ct. 738 (2005), the law takes a very different shape. In *Booker*, the question presented to the Court was:

> Whether the Sixth Amendment is violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact *(other than a prior conviction)* that was not found by the jury or admitted by the defendant.

125 S.Ct. at 747 n. 1 (emphasis added). Thus, in *Booker*, the Supreme Court did not have occasion directly to consider whether its holding in *Almendarez-Torres*, remains good law. However, the logic of the opinions in *Booker*, *Blakely v. Washington*, 124 S.Ct. 2531 (2004), and *Apprendi v. New Jersey,* 530 U.S. 466, 521 (2000), show that *Almendarez-Torres* cannot survive the Supreme Court's holding in those cases. *See also Shepard v. United States*, __U.S.___, (2005), ___ 125 S.Ct. 1254, 1263 (noting that "[i]t is up to the future to show" whether *Apprendi* will be extended "to proof of prior convictions.")

Under *Apprendi, Blakely, and Booker*, the maximum sentence the Court may impose must be based *"solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," Blakely,* 124 S.Ct. at 2537 (emphasis in original); *Booker*, 125 S.Ct. at 746-747. Here, if the "sentencing enhancement" set forth in 8 U.S.C. §1326(b)(2) is used or the Court relies upon USSG §2L1.2(b)(1)(A), which provides for a 16-level increase based on a defendant's conviction of certain offenses, the statutory maximum and the guidelines calculation

will be increased beyond what they would otherwise provide. The use of the increase statutory maximum and guidelines range would do just as much violence to the Sixth Amendment as the sentencing enhancements at issue in *Apprendi, Blakely, and Booker*.

Like the facts labeled "sentencing enhancements" by the statutes and guidelines at issue in *Apprendi* (enhancement for crime motivated by race); *Blakely (*enhancement for crime committed with "deliberate cruelty"), and *Booker (*enhancement for drug weight), the defendant has the "right to have the jury find the existence of 'any particular fact' that the law makes essential to his punishment." *Booker*, at 125, S.Ct. at 738, quoting *Blakely*, 124 S.Ct. at 2536. "That right is implicated whenever a judge seeks to impose a sentence that is not solely based on 'facts reflected in the jury verdict or admitted by the defendant.'" *Id*. *See also Ring v. Arizona,* 536 U.S. 584, 602 ("If a State makes an increase in a defendant's authorized punishment contingent on a finding of a fact, that fact--no matter how the State labels it--must be found by a jury beyond a reasonable doubt.")

There is no principled distinction between the need to prove the fact of a prior conviction of a particular type--here, "an aggravated felony," to increase the statutory maximum, or a felony "drug trafficking offense for which the sentence imposed exceeded 13 months," to boost the guidelines range, and the sentencing enhancements that the Court required to be proved beyond a reasonable doubt in *Apprendi*, *Blakely*, and *Booker*--all decided after *Almendarez-Torres*. The question is not whether a defendant's record, properly plead and proved, can be taken into account at sentencing--it clearly can. The question is whether statutory or guidelines enhancements "make[] an increase in a defendant's authorized punishment contingent on a finding of fact." *Ring*, 536 U.S. at 602. Here, both § 1326(b)(2) and USSG §2L1.2(b)(1)(A) do just that. Thus, the question whether the defendant's record contains the necessary "aggravated

felony" or felony "drug trafficking offense for which the sentence imposed exceeded 13 months," must be plead in the indictment, and found by a jury beyond a reasonable doubt" or admitted by the defendant. *Id.*

Moreover, there is strong reason to believe that the result in *Almendarez-Torres* would not survive if the question reached the Supreme Court. Neither of the *Booker* majority opinions cites *Almendarez-Torres;* indeed, Justice Breyer's dissent cites it as being at odds with the *Booker* majority's interpretation of the right to jury trial. 125 S.Ct. at 738. *Almendarez-Torres* was a 5-4 decision. Justice Thomas was the only Justice in the majority in *Apprendi, Blakely, Booker* and *Almendarez-Torres*, and Justice Thomas has since described his vote with the majority in *Almendarez-Torres* as "an error to which I succumbed," *Apprendi v. New Jersey,* 530 U.S. at 521 (2000)(concurring opinion). See also *Shepard*, __U.S.___, 125 S.Ct. at 1264 (Thomas, J. concurring)("a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided").

Consequently, *Almendarez-Torrez* cannot survive the view of a defendant's Sixth Amendment rights outlined in *Apprendi, Blakely,* and *Booker*. To the defendant's knowledge, the First Circuit has not directly addressed a challenge to an "enhancement" under 8 U.S.C. § 1326 (b)(2) since *Booker,* though it generally continues to treat *Almendarez-Torres* as good law, and has held that the use of a 8 U.S.C. § 1326 (b)(2) enhancement after *Blakely* (but before *Booker*) was not plain error. *United States v. Cardoza-Estrada,* 385 F.3d 56, 59 (1st Cir. 2004); *see also United States v. Work,* 409 F.3d 484, 491 n. 1 (1st Cir. 2005); *United States v. Stearns*, 387 F. 3d. 104, 107 (1st Cir. 2004) *cert. denied,* ___ U.S. ___, 125 S.Ct. 1614 (2005)("the *Blakely* decision does not encompass sentencing enhancements based upon the 'fact of prior conviction'". . . )(citation omitted). But the failure to extend the logic of *Apprendi, Blakely,* and

*Booker* to an enhancement under §1326(b)(2) or USSG 2L1.2 would lead to the very evil that *Apprendi, Blakely,* and *Booker* were designed to address: the elevation of "Sixth Amendment formalism [over] the need to preserve Sixth Amendment substance." *Booker*, 125 S.Ct. at 752.[1] In this context, the Court is confronted with the question whether to continue to follow "the First Circuit's interpretation of [*Almandarez-Torres*] notwithstanding their reliance on Supreme Court precedent which is crumbling." *United States v. Malouf*, 377 F. Supp. 2d 315, 325 (D. Mass. 2005). Defendant respectfully suggest that the Court rule that "the breath of the holdings in *Booker* and *Blakely have* in fact overruled [*Almandarez-Torres*]," *Malouf*, 377 F. Supp. 2d at 325, and sentence the defendant based on that two-year statutory maximum.

**III.    A Sentence of No More than 45 Months is Consistent with the Purposes of Sentencing Described By 18 U.S.C. 3553(a).**

In *United States v. Booker,* the Supreme Court held that the United States Sentencing Guidelines provisions concerning fact-finding and sentencing violated the Sixth Amendment to the United States Constitution. 125 S.Ct. at 746. In the Court's "remedy" opinion, the Court held that "the provision of the federal sentencing statute that makes the Guidelines mandatory

---

[1] In fact, this logic should extend wherever the government has failed to plead and prove beyond a reasonable doubt facts about a criminal conviction, including facts concerning the identity of the person convicted, the date the conviction took place, or the kind of crime at issue. The defendant does not waive and specifically preserves his challenge to the use of any criminal conviction that place him in a category higher than category I. *See generally United States v. Thompson,* 421 F.2d 278, 291 (4th Cir. 2005) Wilkinson, C.J. dissenting (Failure to plead a prior conviction violates the Sixth Amendment and the Indictment Clause of the Fifth Amendment; failure to specifically object to facts included in a PSR "does not operate as a waiver of [defendant's] constitutional right--which he explicitly asserted--to have a fact charged in his indictment when that fact is being used to increase the maximum sentence to which he is subject.") Indeed, in these circumstances, counting a failure specifically to contest the fact of a conviction that could have substantial significance to a defendant also violates the defendant's rights against self-incrimination. Again, however, the defendant recognizes that, at least to date, these principles have been rejected by the First Circuit. *See United States v. Work*, 409 F.3d 484, 491 n.1 (1st Cir. 2005); *United States v. Stearns*, 387 F.3d 104, 107 (1st Cir. 2004), cert. denied, ___ U.S. ___ 125 S.Ct. 1614 (2005).

[is] incompatible with today's constitutional holding" and therefore "must be severed and excised . . . " 125 S.Ct. at 756. The Court concluded that:

> So modified, the Federal Sentencing Act . . . makes the Guidelines effectively advisory. It requires a sentencing court to *consider* Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4)(sup. 2004), but permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)(sup. 2004).

*Id*. at 757 (emphasis added). The touchstone, under the new sentencing regime, is 18 U.S.C. § 3553(a), which sets forth a number of factors courts must consider when imposing sentence. 18 U.S.C. § 3553(a) provides, as applicable:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
> 
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> 
> (2) the need for the sentence imposed--
> 
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> 
>     (B) to afford adequate deterrence to criminal conduct;
> 
>     (C) to protect the public from further crimes of the defendant; and
> 
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> 
> (3) the kinds of sentences available;
> 
> (4) the kinds of sentence and the sentencing range established for--
> 
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines--(i) issued by the Sentencing Commission . . .
> 
> (5) any pertinent policy statement--
> 
>     (A) issued by the Sentencing Commission . . .[and]
> 
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Here, while the advisory guideline range is 57 to 71 months, and the government has agreed to recommend a sentence at the low end of that range, a sentence of no more than 45 months is sufficient to accomplish the purposes of sentencing and, indeed, would represent the *second-longest* of the 20 sentences known to the defendant to have been imposed in illegal reentry cases by the Judges of this District since the advent of advisory guidelines sentences.

Defendant, as the PSR found, is one of 22 children.  PSR ¶49.  He is 42, and was born and grew up in the Dominican Republic.  PSR ¶47.  His mother died when he was four. PSR ¶52.  His highest level of education is the fifth grade.  PSR ¶49.  He left Santo Domingo for the first time in 1986, in search of better employment opportunities.  PSR ¶56.  In the United States, he has worked as an auto mechanic and a mover.  PSR ¶¶72, 78.  Defendant acknowledges that has entered the country illegally three times--in 1986, 1995, and 2000.  PSR ¶¶72, 76, 78.  The PSR concludes that, on each of these occasions, he became involved in dealing drugs.[2]  Defendant has a strong desire to return to the Dominican Republic immediately, but recognizes that, under the circumstances, a federal prison sentence is inescapable.

The question before the Court is the length of that prison sentence.  The advisory guidelines set out a range of 57-71 months.  The government has agreed to recommend a sentence at the low end of the range.  As the table on the page that follows reflects, in none of the twenty illegal reentry cases known to defense counsel where Judges in this District have used advisory guidelines to sentence defendants has a Judge exceeded the advisory guidelines range.[3]

---

[2] See n. 1, supra.  Again, the defendant does not waive his right to require the government to plead and prove the fact of prior convictions.

[3] To compile the chart, a Northeastern Coop student employed in defense counsel's office examined, on Pacer, the "Case Summary" page in every criminal case filed in the District between January 1, 2003 and March 1, 2005 and identified those which charged the defendant with violating 8 U.S.C. §1326.  Defense counsel then reviewed the dockets in each of those cases where sentences were imposed after *Blakely* to determine whether the sentence was imposed by a District Judge using the guidelines as advisory.  Thus,

### Known Illegal Reentry Cases
### Sentenced Under Advisory Guidelines Regime

| Defendant Name | Docket No | Sentence | Sentencing Date | Guidelines Range (If Available) |
|---|---|---|---|---|
| Gonzalez | 03-10027-NG | 40 Months | 11.17.2004 | 41-57 Months |
| Revolario | 03-10267-MLW | 27 Months | 11.12.2004 | 24-30 Months |
| Pimental-Lara | 03-10285-RCL | 21 Months | 11.08.2004 | 46-57 Months |
| Esturban | 03-10301-JLT | 36 Months | 3.7.2005 | Not in public record |
| Suarez-Perez | 04-10007-MEL | 40 Months | 3.8.2005 | 57-71 Months |
| Perez | 04-100014-PBS | 18 Months | 9.7.2004 | 24-30 Months |
| Garcia-Gonzalez | 04-10070-JLT | Time Served (16 Months) | 1.13.2005 | Not in public record |
| Abreu-Cabrera | 04-10081-JLT | 24 Months | 5.23.2005 | Not in public record |
| Francis | 04-10088-DPW | 41 Months | 4.26.2005 | 41 to 51 Months |
| Pleitez-Martinez | 04-10131-WGY | 45 Months | 3.8.2005 | 46 to 57 Months |
| Rodriguez | 04-10132-WGY | 36 Months[4] | 12.22.2004 | 30 to 37 Months |
| Cruz | 04-10149-RWZ | 27 Months | 4.26.2005 | 46 to 57 Months |
| Medrano-Baez | 04-10228-RGS | 30 Months | 7.19.2005 | 37 to 46 Months |
| Cabral Medeiros | 04-10267-DPW | 43 Months | 8.26.2005 | 77 to 96 Months |
| Rodriguez | 04-10268-RGS | 57 Months[5] | 6.8.2005 | 57 to 71 Months |
| Cassiano | 04-10277-RCL | Probation for one year | 9.20.2004 | 0 to 6 Months |
| Campos | 04-10279-DPW | 18 Months[6] | 2.16.2005 | 18-24 Months |
| Mathias | 04-10287-NG | Time Served (2 months) | 10.29.2004 | 0 to 6 Months |
| Medina-Arango | 04-10329-NMG | 37 Months | 8.3.2005 | 37-46 Months |
| Pascal | 05-10029-MLW | Time Served (6 Months) | 9.21.2005 | 18 to 24 Months |

---

defense counsel believes the table reflects all of the sentences imposed *Blakely* by Judges who used the guidelines as advisory, and all the illegal reentry sentences imposed following *Booker*.

[4] Including credit for time served for 20 days prior to first appearance.

[5] Including credit for time served for 30 days prior to first appearance.

[6] Concurrent with 15 months sentence imposed by Judge Stearns three days earlier in a separate case.

As is evident, the Judges in the District have exceeded the low end of the range only twice out of the 17 cases where the guidelines range is known, and have in 10 of the 17 cases imposed a sentence somewhat lower than the Guideline range. Defendant respectfully suggests a sentence slightly below the advisory range is appropriate here.

First, defendant notes that the advisory guidelines calculation includes 9 criminal history points. In calculating the criminal history score, the PSR added two points under USSG §4A1.1 (d), which instructs the Court to "[a]dd **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The apparent purpose of that provision is to discourage defendants from committing additional crimes while under criminal justice supervision or, at least, to punish them when they do. The premise is that defendants have some choice in the matter. Here, the PSR concludes that the defendant committed the instant offense by being "found" by government agents in the United States when he was in state custody. ¶37. But, once the defendant was sentenced and jailed, he had no choice but to *continue* to commit a crime (that is, by remaining in the United States), but *now* under a criminal justice sentence. Indeed, the only way he could have avoided the two-point enhancement under USSG §4A1.1 (d) was to cease committing a crime--that is, to cease remaining in the United States. And the only way for him to do *that* would be to *escape* from state custody--not something the law should encourage or reward. The defendant suggests that the increase in defendant's criminal history score that results from this "Catch 22" be discounted. The defendant recognizes that this position is inconsistent with First Circuit precedent from the mandatory guidelines era, *see United States v. Cuevos,* 75 F.3d.778, 784 (1st Cir. 1996); however, in a regime where guidelines are advisory, not mandatory, the Court should be entitled to take into account the fact that the

defendant's criminal history score includes two criminal history points that were, literally, unavoidable.

Second, the defendant respectfully suggest that the Court consider the fact that the government brought this case in federal court only after defendant completed the state sentence he was serving. *See* PSR ¶1-3. If the government had brought the case earlier (and defendant does not suggest the government was obligated to do so) the Court would have had the option, in an advisory guidelines regime, of imposing a concurrent or partially concurrent sentence[7] -- something the Court could not do now even if it was inclined to.

Finally, a 45-month sentence is "sufficient, but not greater than necessary" to punish the defendant for his crime. From the government's perspective, or the perspective of the federal criminal justice system, there is truly little difference between the deterrent or punitive value of a sentence of 57 months and one of 45 months. From the defendant's perspective, it is entire year of his life. Indeed, a 45 month-sentence would be the second-longest sentence imposed in an illegal reentry case by any Judge in this District in the advisory guidelines era, and would serve the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S. C. § 3553 (a)(6).

---

[7] As defense counsel reads the guidelines, a concurrent sentence would not likely have been available in a mandatory guidelines regime. See USSG §5G1.3(a)(b).

**IV.     Conclusion.**

For the reasons set forth above, the defendant respectfully requests that the Court determine that the defendant faces a maximum sentence of two years, not twenty years, and impose sentence accordingly. Alternatively, the defendant requests that the Court impose a sentence of no more than 45 months.

Respectfully Submitted,

/s/ Martin F. Murphy
Martin F. Murphy
BBO 363250
Foley Hoag LLP
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1213 (phone)
(617) 832-7000 (telecopier)
mmurphy@foleyhoag.com

Served Electronically